UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
LISA NECKRITZ KORAL,

                         Plaintiff,                      **REPORT AND**
                                                     **RECOMMENDATION**

                 -against-                        CV 17-7011 (SJF)(AYS)

ALSOU SAUNDERS, individually and as
Administratrix of the Estate of Gregg Saunders
and ESTATE OF GREGG SAUNDERS,

                        Defendants.
---------------------------------------------------------------X

**SHIELDS, Magistrate Judge:**

       This is an action commenced by plaintiff Lisa Neckritz Koral ("Koral" or "Plaintiff")

against defendants Alsou Saunders ("A. Saunders"), both individually and in her capacity as

administratrix, and the Estate of Gregg Saunders (the "Estate") (collectively, "Defendants"),

alleging claims of fraud with respect to the divorce action between Plaintiff and her former, now

deceased husband, Gregg Saunders ("Mr. Saunders").

       Presently before this court, on referral from the Honorable Sandra J. Feuerstein for report

and recommendation, are the parties' cross-motions for summary judgment. Alleging that Mr.

Saunders lied and perjured himself during the divorce proceedings, Plaintiff seeks partial

summary judgment as to liability. <u>See</u> Memorandum of Law in Support of Plaintiff's Motion for

Partial Summary Judgment ("Pl.'s MOL Br.") Docket Entry ("DE") [45-2] at 5-6.[1]  Defendants

seek summary judgment as to all of Plaintiff's claims asserting that the record is devoid of any

facts to support any claim of fraud. <u>See</u> Memorandum of Law in Support of Defendants' Motion

---
[1]. For ease of reference, page numbers referenced herein are numbers assigned to pages on
electronically filed documents, and not to the underlying documents themselves except for page
numbers referenced in cases.

for Summary Judgment ("Defs'. MOL Br.") Docket Entry ("DE") [41] at 6. Defendants' further argue that all of Plaintiff's claims are barred by the statute of limitations and that no basis exists for maintaining claims against A. Saunders individually. Id. at 6-7.

For the reasons set forth below it is respectfully recommended that Defendants' motion be granted, Plaintiff's motion be denied, and the case be dismissed in its entirety.

## FACTUAL BACKGROUND

I.    Basis of Facts Recited Herein

The facts set forth below are drawn largely from the parties' statements of material facts submitted pursuant to Rule 56.1 of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York (the "Rule 56.1 Statements"). The facts are undisputed unless otherwise noted.

The Court turns to discuss the facts relied upon by the parties in connection with the present motion.

II.   The Marriage

On May 25, 1997, Plaintiff and Mr. Saunders, now deceased, were married. In 2002, Mr. Saunders filed for divorce against Plaintiff in New York Supreme Court, New York County (the "Divorce Action"). The Divorce Action ensued for the next two years, finally settling in July of 2004.

III.  Valuation of the Marital Assets

During the Divorce Action, both Plaintiff and Mr. Saunders were represented by counsel. Plaintiff was initially represented by Sheresky Aronsky, who was subsequently substituted as counsel by Blank Rome LLP. The marital assets consisted of commercial real estate holdings, bank accounts and home equity. Plaintiff and Mr. Saunders' divorce counsel jointly retained

Richard Marchitelli ("Marchitelli") at Pricewaterhouse Coopers to prepare a summary report of the difference in the respective market values of Mr. Saunders' interests in various properties located in Southbury Connecticut, Danbury, Connecticut, Long Island City, New York, Clifton, New Jersey, and Pawling, New York between the date of the marriage of Plaintiff and Mr. Saunders, and the date of commencement of the Divorce Action.

Mr. Saunders also submitted a Statement of Net Worth (the "Statement"), under penalty of perjury, which contained representations about the values of the real estate holdings at issue in the Divorce Acion. According to the Statement, Mr. Saunders had a total net worth of only $855,000, consisting of $1,202,000 of total assets and $347,000 of liabilities. Declaration of Matthew Press in Support of Plaintiff's Motion for Partial Summary Judgment ("Press Decl."), Ex. 7, DE [45-11].

In connection with the appraisal submitted by Mr. Saunders, he furnished financial documents and records to Marchitelli, but made it known to Marchitelli that he did not have access to the books and records of the managing partners of the entities in which Mr. Saunders possessed interests. During the appraisal process Marchitelli had numerous communications and discussions with divorce counsel for both parties, and Plaintiff and her counsel understood that the appraisal process was limited to the extent that Mr. Saunders and Marchitelli did not have access to the books and records of managing partners, and Mr. Saunders did not control the records of those partners. Counsel for both parties requested that Marchitelli proceed with the report despite the fact that it would be subject to the limitations outlined above. Penzer Decl., Ex. D, Affidavit of Richard Marchitelli ("Marchitelli Aff."), at ¶ 7, DE [41-7].

On March 25, 2003, Marchitelli issued the appraisal which confirmed Mr. Saunders' representations concerning the value of the real estate holdings. The Marchitelli Report made

certain assumptions regarding leasing commissions and analyzed base rent increases guaranteed under the leases, rather than options that were not guaranteed. Declaration of Matthew Press in Opposition to Defendants' Motion for Summary Judgment ("Press Opp. Decl.") Ex. 1 at 21, 24, 26, 47, 49, [42-5].

Specifically, with regard to the Long Island City property, the appraisal assigned it zero value. Press Opp. Decl., Ex. 1 at 7. Marchitelli found that the retrospective market value of the leased fee estate of the property in 1997 was approximately $20 million dollars, and $19,700,000 in 2002. Id. at 54-76. Marchitelli also found that outstanding mortgage on the Long Island City Property in both 1997 and May 2002 exceeded the then market value of the property. Id. at 10. Ultimately, the appraisal concluded that the "retrospective value of Gregg Saunders' partnerships interests in 1997 and 2001 was $0." Id. at 76.

Marchitelli's analysis for the Long Island City property was based on rent roll and mortgage information. The May 2002 rent rolls for the Long Island City property identified a lease with National Wholesale Liquidators ("NWL") which commenced in September 2001, with a base rent of $15.38 per square foot, with an escalation in 2007 to $16.92 per square foot, and a lease termination date of January 1, 2009. Press Opp. Decl., Ex. 1 at 10, 66. However, subsequent to the issuance of the appraisal and prior to the finalization of the divorce, NWL signed a lease with a February 2003 commencement date, running until 2014 and paying $21 per square foot for base rent. Press Decl. Ex. 1, DE [45-5].

IV.    Mr. Saunders Sells Half of His Partnership Interest

In May 2003, motivated by the need for funds due to the divorce, and nearly a year after the valuation date contained in the Marchitelli appraisal, Mr. Saunders sold 9.095% of his 18.19% interest in 3500 Owners Association ("3500"), the entity that owned the various

commercial properties at issue in the divorce, including the Long Island City property. Mr. Saunders sold the 9.095% interest to Geoffrey Gordon ("Gordon") for $650,000. Press Decl., Ex. 9, DE [45-13]. The sale proceeds were paid to the account of Mr. Saunders' attorney, rather than Mr. Saunders' own account.

A May 16, 2003 purchase agreement executed in connection with the sale of Mr. Saunders' interest (the "Purchase Agreement") states that Gordon would be provided with a "report regarding the Partnership and 3500 48th Street Associates." Press Decl., Ex. 9 at §2.3(a). However, while the Purchase Agreement states that a CPA would provide the report, the Purchase Agreement does not specify the type of report that would be provided, nor is there any indication that such a report was ever provided. Id.

V.    Refinance of the Long Island City Property

On June 23, 2003, 3500 48th St Owner LLC entered into a refinance transaction with CIBC for $22,300,000.00 for the Long Island City property. Press Decl., Ex. 10, DE [45-14]. The Amended and Restated Mortgage identified an unpaid principal balance for the Long Island City property of $19,804,382.34 as of June 2003. Id. The Amended and Restated Mortgage does not identify the total amount of indebtedness that existed as of May 2002. Id.

VI.   Divorce Deposition

On August 23, 2003, Mr. Saunders was deposed in connection with the Divorce action. Mr. Saunders testified to the following regarding the Long Island City Property:

Q:    What percentage ownership do you have in that entity?

A:    I don't know because I am in an entity that is in partnership with another entity, so it may be 18.9 percentage or – I think it might say like 18.9 percent, but that is 18.9 percent of 45 percent or 100 percent. I don't know specifically. I think that – there are so many partners in this property and there are all different partnerships that are partners in this property.

Press Decl., Ex. 11 Gregg Saunders Deposition 8/23/03 ("Saunders Tr.") 136:20-137:6, DE [45-15].

## VII.    The Divorce Settlement

During the Divorce, Plaintiff's then counsel raised numerous complaints and challenges regarding the accuracy of the Marchitelli report, but when given the opportunity, elected not to engage a second neutral appraiser. Reply Declaration of Russell Penzer in Further Support of Defendants' Motion for Summary Judgment ("Penzer Rpl.Decl")., Ex. C at p. 1 and 4, DE [43-5]. After lengthy negotiations between Plaintiff and Mr. Saunders and their respective counsel, the terms of their divorce and division of assets were eventually reflected in a Stipulation of Settlement dated July 22, 2004 (the "Stipulation"). Declaration of Russell L. Penzer in Support of Defendants' Motion for Summary Judgment ("Penzer Decl."), Ex. B, DE [41-5]. The Stipulation was incorporated by reference into the Judgment of Divorce in August 2004. See id. The Stipulation provides that:

> Both the legal and practical effect if this Stipulation in each and every respect and the financial status of the parties has been fully explained to both parties by counsel. Both parties acknowledge that it is not the result of any fraud, duress, coercion, pressure or undue influence exercised by either; that each party has sought and obtained independent legal advice from counsel of his or her own selection . . . .

Id. at ¶ N. The Stipulation further provides that:

> Each of the parties represent that he or she has made full disclosure of all assets and income in a net worth statement furnished to the other party through counsel. Each party has further made independent inquiry into the financial circumstances of the other through discovery and inspection and the House and Husband's business interests have been appraised by a neutral appraiser appointed by the Court and the Husband has been deposed by the Wife's attorneys. Each party warrants and represents that they have conducted discovery to their satisfaction. Each party has waived and hereby waives any such rights to the extent not already pursued. The parties have instructed their respective attorneys not to take any further steps, themselves or through others, in connection with such disclosure, discovery, inspection, investigation and appraisal of the other's property.

Id. at ¶ L.

VIII.    Plaintiff's Deposition

On December 1, 2017, after learning of the increase in Mr. Saunders' property values since the time of her divorce (during a wrongful death action brought by the Estate), Plaintiff commenced this action. She later filed the Amended Complaint on February 21, 2018, asserting causes of action against Defendants for fraud, fraud in the inducement, breach of fiduciary duty, and constructive trust. At deposition for the instant action, Plaintiff was asked the following with regard to Marchitelli's report:

> Q:    Do you have any basis to believe that Mr. Marchitelli's appraisal was inaccurate?
>
> A:    I don't have any reason to believe that.
>
> Q:    At the time of the divorce, did you do anything to challenge Mr. Marchitelli's report?
>
> A:    Not that I can recall.
>
> Q:    Do you have any reason to believe that Mr. Marchitelli's conclusions with respect to the value of the Danbury property was inaccurate?
>
> A:    No.
>
> Q:    Do you have any reason to believe that Mr. Marchitelli's conclusions with respect to the value of Gregg's interest in the Long Island City property were inaccurate?
>
> A:    The question is, do I have any reason to believe that Mr. Marchitelli conclusions are inaccurate?
>
> Q:    With respect to the Long Island City property and Gregg's interest?
>
> A:    I did not have any reason to believe they are inaccurate.
>
> Q:    Did you have any reason at the time to question the validity or accuracy of that appraisal?

A:      I did not.

Q.      At the time that you signed this, were you satisfied with the appraisal that Mr. Marchitelli created?

A:      At the time, yes.

Penzer Decl., Ex. E, Deposition of Lisa Koral ("Koral Tr."), 108:23-109-7; 110:21-25; 112:22-113:9; 132:5-8; 145:7-10, DE [41-8].

Plaintiff also testified regarding her belief about the value of Mr. Saunders' commercial properties at the time of their divorce:

Q:      What do you believe the value of those properties were at the time of your divorce from Mr. Saunders?

A:      Well, as we just reviewed the stipulation settlement, I agreed to a paragraph that basically says that there – that those properties are his and that was based on the information of the neutral appraisal that we utilized in the divorce, which, at the time, amounted to little to no value at the time of my divorce.

Q:      Why do you say it amounted to little or no value?

A:      That's what the appraisal demonstrated at the time, to the best of my recollection.

Q:      As we sit here today, what do you believe the value of those properties was at the time of your divorce?

A:      I don't know the exact value at the time of my divorce. But it would have to be grossly, given the amount of value that those properties are holding today, or at the time of sale. I believe, that Gregg sold those properties after my divorce.

Q:      Why do you believe that it would have to be grossly inaccurate?

A:      Because of the passage of time, the amount of passage of time, and the amount of increase in the value that the properties were sold for, I don't have the exact facts in front of me, would suggest that Mr. Marchitelli's numbers were grossly inaccurate.

Penzer Decl., Koral Tr. 154:17-156:4.

Further, when questioned regarding A. Saunders, Plaintiff testified:

Q:      What is your belief as to what Mrs. Saunders did individually wrong to you?

A:      I don't know. I had a discussion previously with my attorneys.

Q:      Do you have an independent belief that Mrs. Saunders has done anything to you that makes her liable?

A:      I can't answer that question right now.

Q:      Based on attorney/client privilege?

A:      I just don't have that information to give that to you right now.

Q:      Do you believe that Alsou Saunders made any false misrepresentations to Mr. Marchitelli?

A:      I don't know.

Q:      Do you believe that Alsou Saunders made false misrepresentations to anybody during the course of your divorce?

A:      I don't know.

Q:      Do you believe that Alsou Saunders defrauded you in some fashion?

A:      I don't know at this time.

Penzer Decl., Koral Tr. 189:24-191:4.

IV.    The Motions for Summary Judgment

Defendants seek summary judgment as to all of Plaintiff's claims asserting that the record is devoid of any facts to support any claim of fraud. See Defs'. MOL Br. at 6. Defendants' further contend that any fraud claim is barred by the statute of limitations as any purported act of fraud accrued during the divorce action, more than thirteen years prior to the commencement of this lawsuit. Id. Defendants further claim that Plaintiff cannot establish a basis for tolling the statute of limitations under the "discovery rule" because she has failed to identify any facts

underlying any alleged discovery of fraud or misrepresentation. Id. Finally, Defendants argue no basis exists for maintaining claims against A. Saunders individually. Id. at 6-7.

Plaintiff moves for partial summary judgment, contending that she is entitled to rescission of the Stipulation of Settlement because during the Divorce Action Mr. Saunders deliberately and systemically misrepresented the value of interests held in certain commercial properties, thereby falsely inducing Plaintiff to cede those interests to him. Pl.'s MOL Br. at 5. Plaintiff further claims that Mr. Saunders perjured himself during his deposition in order to conceal his falsehoods and convince Plaintiff to accept a lesser settlement amount. Id.

Having summarized the facts and the parties' positions the Court turns to the merits of the motion.

<u>DISCUSSION</u>

I.    <u>Legal Principles: Standards on Summary Judgment</u>

Summary judgment is appropriately granted only where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); <u>see</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986). "An issue of fact is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party. <u>SCR Joint Venture L.P. v. Warshawsky</u>, 559 F.3d 133, 137 (2d Cir. 2009). A fact is "material" if it might affect the outcome of the litigation under the relevant law. <u>Id</u>. The party moving for summary judgment is first responsible for demonstrating the absence of any genuine issue of material fact. <u>Celotex</u>, 477 U.S. at 322. Summary judgment is appropriate when the non-moving party "fails to make a showing sufficient to establish the existence of an

element essential to that party's case, and on which that party will bear the burden of proof at trial." Abramson v. Pataki, 278 F.3d 93, 101 (2d Cir. 2002) (quoting Celotex, 477 U.S. at 322).

In deciding a motion for summary judgment, the Court must "resolve all ambiguities and draw all reasonable inferences against the moving party". Tolbert v. Smith, 2015 WL 3875237 *4 (2d Cir. 2015); see Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). However, in opposing a motion for summary judgment, the non-moving party may not rely on unsupported assertions, conjecture or surmise, Goenaga v. March of Dimes Birth Defects Found., 51 F.3d 14, 18 (2d Cir. 1995), and must do more than show that there is "some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586. Instead, the non-moving party must "set forth significant, probative evidence on which a reasonable fact-finder could decide" in her favor. Anderson v. Liberty Lobby Inc., 477 U.S. 242, 256–57 (1986).

In addition, "[a]ffidavits submitted to defeat summary judgment must be admissible themselves or must contain evidence that will be presented in an admissible form at trial." Santos v. Murdock, 243 F.3d 681, 683 (2d Cir. 2001); see also Fed. R. Evid. 802; Fed. R. Civ. P. 56(e). For fraud-based claims under New York law, "[e]ach element of the fraud claim must be shown by clear and convincing evidence," and "the evidence presented by the non-moving party in opposition to summary judgment must be enough to make any inference of fraud … unequivocal." Century Pac., Inc. v. Hilton Hotels Corp., 528 F. Supp. 2d 206, 219 (S.D.N.Y. 2007), aff'd, 354 F. App'x. 496 (2d Cir. 2009) (citing Abrahami v. UPC Const. Co. Inc., 638 N.Y.S.2d 11, 13 (1st Dep't 1996) (internal quotations and citations omitted)).

II.    Statute of Limitations

Under New York law, the statute of limitations for fraudulent misrepresentation is the same as common law fraud, the greater of six years from the date the fraud was perpetrated or

two years from the date of plaintiff's actual or reasonably possible discovery of the fraud. See N.Y. C.P.L.R. § 213(8); Dinger v. Kling Agency, Inc., 654 N.Y.S.2d. 415, 416 (2d Dep't 1997). Under New York law, a cause of action for fraudulent inducement must be brought within six years from the actionable conduct or two years from the discovery of the fraud. See Asbeka Indus. v. Travelers Indemnity Co., 831 F. Supp. 74, 80 (E.D.N.Y. 1993); Georgiou v. Panayia of the Mountains Greek Orthodox Monastery, Inc., 16 A.D.3d 998, 999, 792 N.Y.S.2d 667 (N.Y. 2005); N.Y. C.P.L.R. § 213(8). The same statute of limitations applies to breach of fiduciary duty claims where allegations of fraud are essential to the claims. See Kaufman v. Cohen, A.D.2d 113, 118, 760 N.Y.S.2d 157, 164 (1st Dep't. 2003) ("[T]he case law in New York clearly holds that a cause of action for breach of fiduciary duty based on allegations of actual fraud is subject to a six-year limitations period.") (citations omitted); Klein v. Gutman, 12 A.D.3d 417, 419, 784 N.Y.S.2d 581, 584 (2d Dep't. 2004) ("[A] cause of action alleging breach of fiduciary ... based on allegations of actual fraud ... is subject to a six-year limitations period.") (citations omitted). Similarly, under New York law, an action for a constructive trust begins to accrue, and the limitations period begins to run, as of "the date when the acts occurred on which the claim of constructive trust is predicated," Scheuer v. Scheuer, 308 N.Y. 447, 450, 126 N.E.2d 555, 558 (1955). The "acts" relevant are the "wrongful acts" giving rise to the action. See Boronow v. Boronow, 71 N.Y.2d 284, 288, 525 N.Y.S.2d 179, 519 N.E.2d 1375, 1377 (1988) (stating that an action for constructive trust is governed by "the six-year Statute of Limitations ... which begins to run in a constructive trust case upon the occurrence of the wrongful act"); Kaufman v. Cohen, 307 A.D.2d at 127, 760 N.Y.S.2d at 171 ("An action to impose a constructive trust is governed by the six-year statute of limitations ...

which commences to run upon occurrence of the wrongful act giving rise to a duty of restitution, and not from the time when the facts constituting the fraud are discovered.").

Under the two-year discovery rule, accrual occurs "when facts were discovered or ... could with reasonable diligence have been discovered." N.Y. C.P.L.R. § 203(g). The discovery rule provides that "[t]he clock begins to run when the plaintiff has 'inquiry notice' of his injury, namely when he discovers or reasonably should have discovered the ... injury." Singleton v. Clash, 951 F. Supp. 2d 578, 587 (S.D.N.Y. 2013) (alterations in original) (quoting Koch v. Christie's Int'l PLC, 699 F.3d 141, 148 (2d Cir. 2012)). "[I]n applying a discovery accrual rule, [the Supreme Court] ha[s] been at pains to explain that discovery of the injury, not discovery of the other elements of a claim, is what starts the clock." Rotella v. Wood, 528 U.S. 549, 555, 120 S. Ct. 1075, 145 L.Ed.2d 1047 (2000). Thus, "[u]nder the discovery rule, a claim accrues when a plaintiff comes into possession of the critical facts that he has been hurt and who inflicted the injury." Singleton, 951 F. Supp. 2d at 588 (quoting Rotella, 528 U.S. at 556, 120 S. Ct. 1075) (internal quotation marks omitted). Put somewhat differently, a claim has accrued "when the plaintiff knows, or should know, enough to protect himself by seeking legal advice." A.Q.C. ex rel. Castillo v. United States, 656 F.3d 135, 142 (2d Cir. 2011) (quoting Kronisch v. United States, 150 F.3d 112, 121 (2d Cir. 1998)) (internal quotation marks omitted). At that juncture, a plaintiff's failure to investigate his claim will not be excused by delayed accrual, because delaying accrual would undermine the purposes of the applicable statute of limitations. United States v. Kubrick, 444 U.S. 111, 123–24, 100 S. Ct. 352, 62 L. Ed. 2d 259 (1979). This is true even if identifying the elements of a complete cause of action is "a matter of real complexity" because the elements themselves are complex or concealed. See Rotella, 528 U.S. at 556, 120 S. Ct. 1075 (noting that the difficulty inherent in

discovering a pattern of predicate acts as required for a RICO claim or professional negligence as

required for a medical malpractice claim under the Federal Tort Claims Act does not prevent

such claims from accruing once the relevant injury has been discovered).

"[I]t is proper under New York law to dismiss a fraud claim on a motion to dismiss

pursuant to the two-year discovery rule when the alleged facts ... establish that a duty of inquiry

existed and that an inquiry was not pursued." Koch v. Christie's Int'l PLC, 699 F.3d 141, 155–56

(2d Cir. 2012). Under this doctrine, where the circumstances are such as to suggest to a person of

ordinary intelligence the probability that he has been defrauded, a duty of inquiry arises, and if

he omits that inquiry when it would have developed the truth, and shuts his eyes to the facts

which call for investigation, knowledge of the fraud will be imputed to him.

Id. at 155 (citation omitted). The "duty to inquire is triggered by information that relates directly

to the misrepresentations and omissions the [p]laintiffs later allege in their action against the

defendants. The triggering information need not detail every aspect of the subsequently alleged

fraudulent scheme." Cohen v. S.A.C. Trading Corp., 711 F.3d 353, 361 (2d Cir. 2013)(citation

omitted). "[T]he court will impute knowledge of what a plaintiff in the exercise of reasonable

diligence should have discovered concerning the fraud, and in such cases the limitations period

begins to run from the date such inquiry should have revealed the fraud." Id. at 362 (citation

omitted).

For the purposes of this action, the statute of limitations for all of Plaintiff's claims

expired in 2010, six years after the signing of the 2004 Stipulation. This lawsuit was filed on

December 1, 2017, some thirteen years after Plaintiff's claims accrued, and over six years past

the final date by which to commence such an action. Thus, the question is when Plaintiff was put

on "inquiry notice" of the facts giving rise to the alleged fraud or knowledge." LC Capital

Partners, LP v. Frontier Ins. Grp., Inc., 318 F.3d 148, 154 (2d Cir. 2003)(citation omitted); see also Sielcken-Schwarz v. American Factors, Ltd., 266 N.Y. 239, 245 (N.Y. 1934). The test for inquiry notice is "an objective one and dismissal is appropriate when the facts from which knowledge may be imputed are clear from the pleadings and the public disclosures themselves." Salinger v. Projectavision, Inc., 934 F. Supp. 1402, 1408 (S.D.N.Y. 1996); see also In re Merrill Lynch Ltd. P'ships Litig., 154 F.3d 56, 60 (2d Cir. 1998) ("the question of inquiry notice need not be left to a finder of fact"). If Plaintiff was on inquiry notice that Mr. Saunders may had defrauded her during the divorce at any time before December 13, 2007, her claim is time-barred.

Plaintiff alleges that Mr. Saunders mispresented his net worth and the value of his real estate holdings during the Divorce Action because during the wrongful death action brought by the Estate, Plaintiff was made aware that the value of his real estate holdings had greatly increased since the time of their divorce. Assuming arguendo, that this was Plaintiff's inquiry notice of possible fraud during the divorce, and that the current action would, date-wise, fall safely into the two year discovery exception to the six year statute of limitations, this action still would fail to meet the necessary requirements for the two year discovery exception.

Plaintiff has failed to produce any actual evidence that would allow for a tolling of the statute of limitations under the discovery rule. Plaintiff has failed to identify any actual specific misrepresentation or fraud that she has discovered. Plaintiff's discovery of fraud is simply Plaintiff learning that the value of Mr. Saunders' estate and properties at the time of his death were higher than the value appraised at the start of their divorce. Because no actual evidence of fraud was produced in the two years prior to the commencement of this lawsuit, Plaintiff's claims are not tolled under the discovery rule, and therefore, are time-barred.

Even assuming, arguendo, that Plaintiff could identify evidence of a specific misrepresentation or fraud discovered within two years of the commencement of this action, the discovery rule does not permit tolling of the statute of limitations where Plaintiff had an unequivocal opportunity to discover any alleged fraud during the Divorce Action. A fraud claim brought pursuant to the discovery rule cannot survive when the alleged facts establish that duty of inquiry existed but was not pursued. The "duty to inquire is triggered by information that relates directly to the misrepresentations and omissions the [p]laintiffs later allege in their action against the defendants. The triggering information need not detail every aspect of the subsequently alleged fraudulent scheme." Cohen v. S.A.C. Trading Corp., 711 F.3d 353, 361 (2d Cir. 2013) (citation omitted). "[T]he court will impute knowledge of what a plaintiff in the exercise of reasonable diligence should have discovered concerning the fraud, and in such cases the limitations period begins to run from the date such inquiry should have revealed the fraud." Id. at 362 (citation omitted).

The record is clear that Plaintiff was represented by counsel throughout her divorce. The record is also clear that Plaintiff engaged in discovery and had a full and fair opportunity to discover the value of Mr. Saunders' assets. Counsel selected Marchitelli to conduct a neutral appraisal, and all parties were made aware of the limitations of the completed appraisal by Marchitelli himself. Plaintiff and her divorce counsel even raised suspicions concerning the accuracy of the appraisal, but ultimately elected not to engage a second appraiser. Even after having such concerns about the appraisal, Plaintiff, who was still counseled at the time, decided that no more discovery was warranted and entered into the 2004 Stipulation, representing that discovery had been conducted to her satisfaction, and that she had instructed her counsel not to engage in any further discovery. The record is clear that Plaintiff had some suspicions regarding

the value of Mr. Saunders' properties back in 2003 during the Divorce Action, but elected not to pursue them at that time. Therefore, Plaintiff cannot now claim, with reasonable diligence, that she could not have discovered what she now claims as fraud earlier than 2016. Accordingly, it is respectfully recommended that all of Plaintiff's causes of actions are time-barred.

III.   Fraud Claims

While it is clear that Plaintiff's claims are time-barred, Plaintiff's lawsuit is also subject to dismissal because it fails to allege meritorious claims.

Plaintiff's first and second causes of action consist of common law fraud and fraud in the inducement claims against Defendants. To establish a fraud claim, Plaintiff must prove four elements: (i) that Mr. Saunders and Defendants made a material, false representation, (ii) that they had an intent to defraud her thereby, (iii) that Plaintiff reasonably relied on the representation, and (iv) that the representation damaged her. See May Dept. Stores Co. v. Int'l Leasing Corp., Inc., 1 F.3d 138, 141 (2d Cir. 1993); see also Lama Holding Co. v. Smith Barney Inc., 88 N.Y.2d 413, 422 (N.Y. 2009) (citations omitted).

In support of her fraud claim, Plaintiff alleges that Mr. Saunders falsely represented his net worth and falsely represented that his commercial real estate holdings held minimal worth, and did so with the intent to claim that his net worth was less than its true amount during their divorce settlement, that she relied on these false representations when she accepted the 2004 Stipulation of Settlement, and that she was thereby injured by receiving less in the divorce settlement than she would have had she known the true value of Mr. Saunders' net worth and real estate holdings.

In order to defeat Defendants' motion for summary judgment on this claim, Plaintiff would have to proffer "enough proof to allow a reasonable jury to find by clear and convincing

evidence the existence of each of the elements necessary to make out a claim for fraud in the inducement." See Woo v. Times Enter., Inc., No. 98-cv-9171, 2000 WL 297114, at *4 (S.D.N.Y. Mar. 22, 2000); see also Callahan v. Miller, 599 N.Y.S.2d 145, 146 (3rd Dep't 1993).

Given the evidence before the Court, a reasonable jury could not find in favor of Plaintiff on these causes of action. Therefore, it is respectfully recommended that Plaintiff's fraud claims be dismissed.

A.    There Was No Material Misrepresentation

There is insufficient evidence of any material misrepresentation or omission by Mr. Saunders or Defendants. Plaintiff has failed to produce any evidence showing that Mr. Saunders made any false representations during the Divorce Action, nor any scheme to defraud by Defendants. To date, Plaintiff has only posited that Mr. Saunders may have given inaccurate values of the real estate holdings during the divorce, but has no other evidence to support her conclusory allegations. Plaintiff cites to the increase in the value of the properties between the time of her divorce and the wrongful death action brought by the Estate, over ten years later. However, the record is clear that an independent and neutral appraiser valued the properties during the Divorce Action, and made clear to both parties the parameters he utilized to do so. Marchitelli informed both parties that the process was limited to the extent that Mr. Saunders and Marchitelli did not have access to the books and records of the managing partners and Mr. Saunders did not control the records of his partners. Further, it is clear in the appraisal that Marchitelli made certain assumptions regarding leasing commissions and analyzed base rent increases guaranteed under the leases, rather than options that were not guaranteed, when valuing the properties. In other words, Plaintiff was made aware of the limitations of the appraisal at the time it was made, and how the properties were valued. So much so that during the Divorce

Action, Plaintiff's then counsel raised numerous complaints and challenges regarding the accuracy of the Marchitelli report. However, when given the opportunity, counsel elected not to engage a second neutral appraiser.

Plaintiff claims that Mr. Saunders falsely testified during his divorce deposition concerning his partnership interests. However, it is clear from his testimony that Mr. Saunders did not know his exact partnership interest. As he stated:

> I don't know because I am in an entity that is in partnership with another entity, so it may be 18.9 percentage or – I think it might say like 18.9 percent, but that is 18.9 percent of 45 percent or 100 percent. I don't know specifically. I think that – there are so many partners in this property and there are all different partnerships that are partners in this property.

Press Decl., Ex. 11, Saunders Tr. 136:20-137:6.

Accordingly, there is no evidence that Mr. Saunders concealed any assets from Plaintiff during the Divorce Action. Certainly, Plaintiff does not have clear and convincing evidence or evidence sufficient to make an "inference of fraud ... unequivocal." Century Pac. Inc., 528 F. Supp. 2d at 219. Absent such evidence, there is no triable issue of fact. See Greenberg v. Chrust, 282 F. Supp. 2d 112, 117-118 (S.D.N.Y. 2003); Sado v. Ellis, 882 F. Supp. 1401, 1406 (S.D.N.Y. 1995); Korngold v. Korngold, 810 N.Y.S.2d 206, 208 (N.Y. App. Div. 2006); Stoerchle v. Stoerchle, 475 N.Y.S.2d 489, 491 (N.Y. App. Div. 1984). Plaintiff alleges a fraudulent scheme without any specific evidence; at best it is merely an allegation of Mr. Saunders' possible state of mind without specific support. Lacking any particularity, the claim is futile.

B.     Plaintiff Could Not Have Reasonably Relied on Any Misstatement or Omission

New York law is clear that divorce settlement agreements, negotiated by independent counsel, are supposed to be final and should not be lightly disturbed. See, e.g., Harding v.

Nasemen, No. 07 Cv. 8767 (RPP), 2009 WL 1953041, at *24 (S.D.N.Y. July 8,

2009) (citing McFarland v. McFarland, 70 N.Y.2d 916 (N.Y. 1987)). Where spouses expressly

waive their rights to further financial discovery, as Plaintiff did here, they are not permitted to

reopen a divorce simply by asserting that they subsequently discovered some new fact that they

did not know before. See, e.g., Danann Realty Corp. v. Harris, 157 N.E.2d 597, 600 (N.Y.

1959); Luftig v. Luftig, 657 N.Y.S.2d 658, 659 (N.Y. App. Div. 1997); Smith v. Smith, No.

112654/09, 2010 WL 4723452, at *5 (N.Y. Sup. Ct. 2010).

In New York, parties in divorce settlement negotiations are required to "disclose

the existence of assets or material information that could not be discovered by the other party

through reasonable diligence; however, the law places no affirmative duty on a party to disclose

accurately the valuation of an asset that is known or should have been known, through

reasonable diligence, by the other party." Harding v. Naseman, No. 07 CV. 8767 (RPP), 2009

WL 1953041, at *23 (S.D.N.Y. July 8, 2009) (emphasis added), aff'd, 377 F. App'x. 48 (2d Cir.

2010); see also Kojovic v. Goldman, 823 N.Y.S.2d 35, 38 (N.Y. App. Div. 2006). Claims of

fraudulent concealment in divorce cases are particularly frowned upon in New York when each

party is represented by independent counsel during the negotiation and execution of a settlement

agreement. See Naseman, 2009 WL 1953041, *24 (citing McFarland, 70 N.Y.2d 916; Kavner v.

Geller, 854 N.Y.S.2d 343 (1st Dep't 2008); Martin v. Martin, 427 N.Y.S.2d 1002 (4th Dep't

1980)).

Here, as noted above, in the Stipulation, Plaintiff and Mr. Saunders agreed:

Each of the parties represent that he or she has made full disclosure of all assets
and income in a net worth statement furnished to the other party through counsel.
Each party has further made independent inquiry into the financial circumstances
of the other through discovery and inspection and the House and Husband's
business interests have been appraised by a neutral appraiser appointed by the
Court and the Husband has been deposed by the Wife's attorneys. Each party

> warrants and represents that they have conducted discovery to their satisfaction. Each party has waived and hereby waives any such rights to the extent not already pursued. The parties have instructed their respective attorneys not to take any further steps, themselves or through others, in connection with such disclosure, discovery, inspection, investigation and appraisal of the other's property.

Penzer Decl., Ex. B at ¶ L. Further, Plaintiff and her counsel were made aware of the limitations of the Marchitelli appraisal and raised them numerous times before signing the Stipulation. Under these circumstances, any reliance by Plaintiff on any representations or omissions by Mr. Saunders as to his assets would be unreasonable. As the New York Court of Appeals once put it, "[i]f the language here used is not sufficient to estop a party from claiming that he entered the contract because of fraudulent representations, then no language can accomplish that purpose." Danann Realty Corp. v. Harris, 157 N.E.2d 597, 600 (N.Y. 1959).

IV.     Breach of Fiduciary Duty

Plaintiff's third cause of action for breach of fiduciary duty also fails. This cause of action requires Plaintiff to establish three elements: (i) the existence of a fiduciary duty, (ii) a knowing breach of that duty, and (iii) damages resulting therefrom. See Johnson v. Nextel Commc'ns, Inc., 660 F. 3d 131, 138 (2d Cir. 2011). For the reasons stated above, no reasonable jury could conclude that Mr. Saunders' alleged actions and/or omissions had a material affect on Plaintiff's marital assets or her knowledge thereof. This cause of action, like Plaintiff's fraud claims, is also barred by the statute of limitations for the reasons stated in Part II above.

V.     Constructive Trust

Like Plaintiff's other claims, Plaintiff's final cause of action for constructive trust fails. Under New York law, "[i]n general, though as an equitable doctrine its application to particular circumstances is susceptible of some flexibility, to establish a constructive trust there must be provided: (1) a confidential or fiduciary relation, (2) a promise, express or implied, (3) a transfer

made in reliance on that promise, and (4) unjust enrichment." <u>Bankers Sec. Life Ins. Soc'y v.</u> <u>Shakerdge</u>, 49 N.Y.2d 939, 940, 428 N.Y.S.2d 623, 406 N.E.2d 440 (1980) (citations omitted); <u>see also</u> Cerabono v. Price, 7 A.D.3d 479, 775 N.Y.S.2d 585 (2d Dep't 2004). That being said, "strict adherence to the confidential or fiduciary relationship element of a constructive trust is not necessary when a party holds property under circumstances that in equity and good conscience he ought not retain." <u>Sec. Pacific Mortg. & Real Estate Services, Inc.</u> <u>v. Republic of Philippines</u>, 962 F.2d 204, 210 (2d Cir. 1992). Instructive on this point is the famous passage from Justice Cardozo's opinion in <u>Beatty v. Guggenheim Exploration Co.</u>, 225 N.Y. 380, 122 N.E. 378 (1918). He wrote, "A constructive trust is the formula through which the conscience of equity finds expression. When property has been acquired in such circumstances that the holder of the legal title may not in good conscience retain the beneficial interest, equity converts him into a trustee." <u>Id.</u> at 386, 122 N.E. 378. Thus, as Plaintiff's underlying fraud and breach of fiduciary duty claims have failed, this claim similarly fails. Plaintiff has not established any fraud or breach of fiduciary duty that would result in unjust enrichment. This cause of action, like Plaintiff's fraud and breach of fiduciary duty claims, is also barred by the statute of limitations for the reasons stated in Part II above.

## CONCLUSION

For the foregoing reasons, this Court respectfully recommends that Defendants' motion for summary judgment, appearing as Docket Entry No. 41 herein, be granted in its entirety and that Plaintiff's motion for partial summary judgment, appearing as Docket Entry No. 45 herein, be denied, and that the case be dismissed with prejudice.

## OBJECTIONS

A copy of this Report and Recommendation is being provided to all counsel via ECF.  Any

written objections to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days of filing of this report.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 72(b).  Any requests for an extension of time for filing objections must be directed to the District Judge assigned to this action prior to the expiration of the fourteen (14) day period for filing objections.  Failure to file objections within fourteen (14) days will preclude further review of this report and recommendation either by the District Court or Court of Appeals. Thomas v. Arn, 474 U.S. 140, 145 (1985) ("[A] party shall file objections with the district court or else waive right to appeal."); Caidor v. Onondaga Cnty., 517 F.3d 601, 604 (2d Cir. 2008) ("[F]ailure to object timely to a magistrate's report operates as a waiver of any further judicial review of the magistrate's decision").


Dated: Central Islip, New York
        May 25, 2020

                                                   /s/ Anne Y. Shields
                                                  Anne Y. Shields
                                                  United States Magistrate Judge