UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
LISA NECKRITZ KORAL,

                                Plaintiff,                    **REPORT AND**
                                                                    **RECOMMENDATION**
               -against-                           CV 17-7011 (JS)(AYS)

ALSOU SAUNDERS, individually and as
Administratrix of the Estate of Gregg Saunders
and ESTATE OF GREGG SAUNDERS,


                                Defendants.
-------------------------------------------------------------X
**SHIELDS, Magistrate Judge:**

       This matter is currently before the Court on remand from the Second Circuit Court of Appeals. The case arises from the 2004 divorce of plaintiff Lisa Neckritz Koral ("Lisa" or "Plaintiff") and her former, now deceased, husband, Gregg Saunders ("Gregg"). In 2020, this Court granted Defendants' motion for summary judgment, dismissing Lisa's amended complaint against Alsou Saunders ("A. Saunders"), both individually and in her capacity as administratrix, and the Estate of Gregg Saunders (the "Estate") (collectively, "Defendants"), which alleged claims of fraud with respect to the divorce action between Plaintiff and her former husband, Gregg. The Court dismissed the action on the ground that Plaintiff's claims were barred by New York's statute of limitations. Plaintiff appealed and the Second Circuit affirmed in part and vacated in part. The Second Circuit remanded the case to examine a single issue - whether equitable estoppel tolls Lisa's claims arising from Gregg's sale of a certain investment.

       Presently before this court, on referral from the Honorable Joanna Seybert for report and recommendation, are the parties' cross-motions for summary judgment.

1

For the reasons set forth below it is respectfully recommended that Defendants' motion be denied and Plaintiff's motion be granted in part and denied in part.

## FACTUAL BACKGROUND

I.  Basis of Facts Recited Herein

The Court assumes the parties' familiarity with the underlying issues in the case. The facts set forth below are drawn largely from the parties' statements of material facts submitted pursuant to Rule 56.1 of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York (the "Rule 56.1 Statements") and focus solely on facts related to the investment property at issue and its sale. The facts are undisputed unless otherwise noted. To the extent that the statements are properly supported by citation to evidence which would be admissible pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, the factual allegations are taken therefrom; otherwise the Court has disregarded any unsupported assertions. Giannullo v. City of New York, 332 F.3d 139, 139 (2d Cir. 2003)[1]. Moreover, only those facts that are material to the disposition of the motion, *i.e.*, that "might affect the outcome of the suit under the governing law," Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986), are set forth herein. See Zann Kwan v. Andalex Grp. LLC, 737 F.3d 834, 843 (2d Cir. 2013) ("The substantive law governing the case will identify those facts that are material, and only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.").

The Court turns to discuss the facts relied upon by the parties in connection with the present motions.

---

[1] Unless otherwise noted, case quotations omit all internal quotation marks, citations, footnotes, and alterations.

II.     The Marriage

On May 25, 1997, Plaintiff and Gregg, now deceased, were married. During the marriage, Gregg worked in the commercial real estate business. In 2002, Gregg filed for divorce against Plaintiff in New York Supreme Court, New York County (the "Divorce Action"). The Divorce Action ensued for the next two years, finally settling in July of 2004.

III.    The Long Island City Property

Gregg held an 18.19% interest in 3500 Owner Associates L.P. ("Associates), an entity that held a 41.25% interest in 3500 48th Street Associates, which in turn held an interest in a 129,700 square foot shopping mall in Long Island City, New York (the "LIC Property"). At the time of the 1997 marriage, there was a significant vacancy of 13,314 square feet at the LIC Property. During the marriage, that vacancy was filled with a new tenant. The addition of the new tenant immediately added over $213,000 of annual cash flow to the property.

The anchor tenant of the LIC Property was a Pergament Home Center Store. In February of 2001 Pergament filed an involuntary bankruptcy petition. National Wholesale Liquidators ("NWL") was secured as a substitute tenant for the vacant space. Lisa contends that she assisted Gregg in securing NWL as a replacement tenant. Plaintiff's Statement of Material Facts pursuant to Local Rule 56.1, appearing as DE [59-2], ¶ 9; see also Declaration of Lisa Neckritz Koral in Support of Motion for Summary Judgment, appearing as DE [45-3], ¶ 13. Lisa's assistance stemmed from socializing "several times with the family that owned NWL" "during the time that Gregg attempted to cultivate a relationship with them." DE [45-3], ¶ 13. NWL's lease term commenced on September 1, 2001 with a square footage rent of $15.38. However, NWL later inked a new, longer-term lease commencing on February 1, 2003, paying $21 per square foot.

3

IV.      <u>Valuation of the Marital Estate</u>

In 2002, Gregg filed an action for divorce against Lisa. Both parties were represented by counsel. Other than the LIC Property and other commercial real estate holdings, the marital assets consisted primarily of bank accounts and home equity.

Lisa and Gregg's divorce counsel jointly retained Richard Marchitelli ("Marchitelli") at Pricewaterhouse Coopers to prepare a summary report of the difference in the respective market values of Gregg's interests in various properties located in Southbury Connecticut, Danbury, Connecticut, Long Island City, New York, Clifton, New Jersey, and Pawling, New York between the date of the marriage of Plaintiff and Gregg, and the date of commencement of the Divorce Action.

In connection with the appraisal submitted by Gregg, he also furnished financial documents and records to Marchitelli, but made it known to Marchitelli that he did not have access to the books and records of the managing partners of the entities in which he possessed interests. During the appraisal process Marchitelli had numerous communications and discussions with divorce counsel for both parties, and Plaintiff and her counsel understood that the appraisal process was limited to the extent that Gregg and Marchitelli did not have access to the books and records of managing partners, and Gregg did not control the records of those partners. Counsel for both parties requested that Marchitelli proceed with the report despite the fact that it would be subject to the limitations outlined above. Declaration of Russel Penzer in Opposition of Plaintiff's Motion for Partial Summary Judgement ("Penzer Decl."), Ex. D, Affidavit of Richard Marchitelli ("Marchitelli Aff."), DE [41-7], ¶ 7.

During the divorce proceedings, Gregg made specific representations concerning the value of the LIC Property. According to the Statement of Net Worth (the "Statement"), which

4

was submitted under penalty of perjury, Gregg represented that he had a total net worth of only $855,000, consisting of $1,202,000 of total assets and $347,000 of liabilities. The Statement identified real estate assets, including Gregg's $235,000 share of home equity in a house in Sagaponack, NY. Declaration of Matthew Press in Support of Plaintiff's Motion for Partial Summary Judgment ("Press Decl."), DE [45-11], Ex. 7. The Statement assigned minimal value to Gregg's holdings. Further, Gregg's divorce attorney submitted a letter dated June 20, 2002, to Lisa's divorce counsel containing representations about the alleged worthlessness of Gregg's commercial real estate holdings, including the LIC Property. Press Decl., DE [45-12].

V.     The Value of the LIC Property

In a Purchase Agreement dated May 16, 2003, Gregg sold 9.095% of his interest in Associates to Geoffrey Gordon ("Gordon") for a purchase price of $650,000. Gregg's sale of this interest was at least, partially, if not entirely motivated by his need to raise funds for the divorce proceeding. The sale occurred a year after the valuation date contained in the Marchitelli appraisal, which valued the interest at $0, Press Decl., DE [45-6], and was disclosed and approved by the property's managing partner. Press Decl., DE [45-13]. Gordon did not have an appraisal of the partnership rendered prior to the purchase and was aware that the purchase price might not represent fair market value. Penzer Decl., Affidavit of Geoffrey Gordon ("Gordon Aff."), DE [46-4], ¶ 5. Proceeds from the sale were deposited into the account of Gregg's attorney. Gregg also entered into an agreement to assign 9.095% of his interest in Associates to Gordon.

The Purchase Agreement states that Gordon would be provided with a "report regarding the Partnership and 3500 48th Street Associates." Press Decl., DE [45-13], at §2.3(a). However, while the Purchase Agreement states that a CPA would provide the report, the Purchase

5

Agreement does not specify the type of report that would be provided, nor is there any indication that such a report was ever provided. Id. Plaintiff contends that based upon the $650,000 purchase price for Gregg's 9.095% interest, Gregg's full 18.19% interest in Associates in 2002 was worth at least $1,300,000. DE [59-2], ¶ 24.

On August 23, 2003, slightly more than two months after the sale of his partnership interest, Gregg was deposed in connection with the Divorce Action. Gregg testified as follows regarding the LIC Property:

> Q: What percentage ownership do you have in that entity?
>
> A: I don't know because I am in an entity that is in partnership with another entity, so it may be 18.9 percentage or – I think it might say like 18.9 percent, but that is 18.9 percent of 45 percent or 100 percent. I don't know specifically. I think that – there are so many partners in this property and there are all different partnerships that are partners in this property.

Press Decl., Ex. 11 Gregg Saunders Deposition 8/23/03 ("Saunders Tr."), DE [45-15], 136:20-137:6.

## VI. The Divorce Settlement

During the Divorce, Plaintiff's then counsel raised numerous complaints and challenges regarding the accuracy of the Marchitelli report, but when given the opportunity, elected not to engage a second neutral appraiser. Reply Declaration of Russell Penzer in Further Support of Defendants' Motion for Summary Judgment ("Penzer Rpl. Decl")., DE [43-5], at p. 1 and 4. After lengthy negotiations between Lisa and Gregg and their respective counsel, the terms of their divorce and division of assets were eventually reflected in a Stipulation of Settlement dated July 22, 2004 (the "Stipulation"). Declaration of Russell L. Penzer in Support of Defendants' Motion for Summary Judgment ("Penzer Decl."), DE [41-5]. The Stipulation was incorporated by reference into the Judgment of Divorce in August 2004. See id. The Stipulation provides that:

6

> Both the legal and practical effect if this Stipulation in each and every respect and the financial status of the parties has been fully explained to both parties by counsel. Both parties acknowledge that it is not the result of any fraud, duress, coercion, pressure or undue influence exercised by either; that each party has sought and obtained independent legal advice from counsel of his or her own selection . . . .

Id. at ¶ N. The Stipulation further provides that:

> Each of the parties represent that he or she has made full disclosure of all assets and income in a net worth statement furnished to the other party through counsel. Each party has further made independent inquiry into the financial circumstances of the other through discovery and inspection and the House and Husband's business interests have been appraised by a neutral appraiser appointed by the Court and the Husband has been deposed by the Wife's attorneys. Each party warrants and represents that they have conducted discovery to their satisfaction. Each party has waived and hereby waives any such rights to the extent not already pursued. The parties have instructed their respective attorneys not to take any further steps, themselves or through others, in connection with such disclosure, discovery, inspection, investigation and appraisal of the other's property.

Id. at ¶ L.

VII.   Plaintiff's Deposition

On December 1, 2017, after learning of the increase in Gregg's property values since the time of her divorce (during a wrongful death action brought by the Estate of Gregg), Plaintiff commenced this action. She later filed the Amended Complaint on February 21, 2018, asserting causes of action against Defendants for fraud, fraud in the inducement, breach of fiduciary duty, and constructive trust. At her deposition in this case Plaintiff was asked the following with regard to Marchitelli's report:

> Q: Do you have any basis to believe that Mr. Marchitelli's appraisal was inaccurate?
>
> A: I don't have any reason to believe that.
>
> Q: At the time of the divorce, did you do anything to challenge Mr. Marchitelli's report?
>
> A: Not that I can recall.

> Q: Do you have any reason to believe that Mr. Marchitelli's conclusions with respect to the value of the Danbury property was inaccurate?
>
> A: No.
>
> Q: Do you have any reason to believe that Mr. Marchitelli's conclusions with respect to the value of Gregg's interest in the Long Island City property were inaccurate?
>
> A: The question is, do I have any reason to believe that Mr. Marchitelli conclusions are inaccurate?
>
> Q: With respect to the Long Island City property and Gregg's interest?
>
> A: I did not have any reason to believe they are inaccurate.
>
> Q: Did you have any reason at the time to question the validity or accuracy of that appraisal?
>
> A: I did not.
>
> Q. At the time that you signed this, were you satisfied with the appraisal that Mr. Marchitelli created?
>
> A: At the time, yes.

Penzer Decl., Ex. E, Deposition of Lisa Koral ("Koral Tr."), DE [41-8], 108:23-109:7; 110:21-25; 112:22-113:9; 132:5-8; 145:7-10.

Plaintiff also testified regarding her belief about the value of Gregg's commercial properties at the time of their divorce:

> Q: What do you believe the value of those properties were at the time of your divorce from Mr. Saunders?
>
> A: Well, as we just reviewed the stipulation settlement, I agreed to a paragraph that basically says that there – that those properties are his and that was based on the information of the neutral appraisal that we utilized in the divorce, which, at the time, amounted to little to no value at the time of my divorce.
>
> Q: Why do you say it amounted to little or no value?
>
> A: That's what the appraisal demonstrated at the time, to the best of my recollection.

8

> Q: As we sit here today, what do you believe the value of those properties was at the time of your divorce?
>
> A: I don't know the exact value at the time of my divorce. But it would have to be grossly, given the amount of value that those properties are holding today, or at the time of sale. I believe, that Gregg sold those properties after my divorce.
>
> Q: Why do you believe that it would have to be grossly inaccurate?
>
> A: Because of the passage of time, the amount of passage of time, and the amount of increase in the value that the properties were sold for, I don't have the exact facts in front of me, would suggest that Mr. Marchitelli's numbers were grossly inaccurate.

Id. 154:17-156:4.

Further, when questioned regarding A. Saunders, Plaintiff testified:

> Q: What is your belief as to what Mrs. Saunders did individually wrong to you?
>
> A: I don't know. I had a discussion previously with my attorneys.
>
> Q: Do you have an independent belief that Mrs. Saunders has done anything to you that makes her liable?
>
> A: I can't answer that question right now.
>
> Q: Based on attorney/client privilege?
>
> A: I just don't have that information to give that to you right now.
>
> Q: Do you believe that Alsou Saunders made any false misrepresentations to Mr. Marchitelli?
>
> A: I don't know.
>
> Q: Do you believe that Alsou Saunders made false misrepresentations to anybody during the course of your divorce?
>
> A: I don't know.
>
> Q: Do you believe that Alsou Saunders defrauded you in some fashion?
>
> A: I don't know at this time.

Id. 189:24 -191:4.

VIII.    The Motions for Summary Judgment

Defendants assert that all of Plaintiff's claims are barred by the statute of limitations. See Memorandum of Law in Support of Defendants' Motion for Summary Judgment ("Defs'. MOL Br."), DE [60] at 10-14. Defendants' further argue that even if not time-barred, Plaintiff's summary judgment motion must be denied because material questions of fact exist as to her claims. Id. at 14-17.

Alleging that Gregg lied and perjured himself during the divorce proceedings, Plaintiff seeks to estop Defendants from asserting their limitations defense. Plaintiff also seeks summary judgment as to her fraud claim and partial summary judgment as to her claim of breach of fiduciary duty. See Memorandum of Law in Support of Plaintiff's Motion for Partial Summary Judgment ("Pl.'s MOL Br.") Docket Entry ("DE") [59-1] at 8-12

Having summarized the facts and the parties' positions the Court turns to the merits of the motions.

## DISCUSSION

I.    Legal Principles: Standards on Summary Judgment

Summary judgment is appropriately granted only where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "An issue of fact is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party. SCR Joint Venture L.P. v. Warshawsky, 559 F.3d 133, 137 (2d Cir. 2009). A fact is "material" if it might affect the outcome of the litigation under the relevant law.

Id. The party moving for summary judgment is first responsible for demonstrating the absence of any genuine issue of material fact. Celotex, 477 U.S. at 322. Summary judgment is appropriate when the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Abramson v. Pataki, 278 F.3d 93, 101 (2d Cir. 2002) (quoting Celotex, 477 U.S. at 322).

In deciding a motion for summary judgment, the Court must "resolve all ambiguities and draw all reasonable inferences against the moving party". Tolbert v. Smith, 2015 WL 3875237 *4 (2d Cir. 2015); see Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). However, in opposing a motion for summary judgment, the non-moving party may not rely on unsupported assertions, conjecture or surmise, Goenaga v. March of Dimes Birth Defects Found., 51 F.3d 14, 18 (2d Cir. 1995), and must do more than show that there is "some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586. Instead, the non-moving party must "set forth significant, probative evidence on which a reasonable fact-finder could decide" in her favor. Anderson v. Liberty Lobby Inc., 477 U.S. 242, 256–57 (1986).

In addition, "[a]ffidavits submitted to defeat summary judgment must be admissible themselves or must contain evidence that will be presented in an admissible form at trial." Santos v. Murdock, 243 F.3d 681, 683 (2d Cir. 2001); see also Fed. R. Evid. 802; Fed. R. Civ. P. 56(e). For fraud-based claims under New York law, "[e]ach element of the fraud claim must be shown by clear and convincing evidence," and "the evidence presented by the non-moving party in opposition to summary judgment must be enough to make any inference of fraud ... unequivocal." Century Pac., Inc. v. Hilton Hotels Corp., 528 F. Supp. 2d 206, 219 (S.D.N.Y. 2007), aff'd, 354 F. App'x. 496 (2d Cir. 2009) (citing Abrahami v. UPC Const. Co. Inc., 638 N.Y.S.2d 11, 13 (1st Dep't 1996) (internal quotations and citations omitted)).

11

II.  Tolling

Defendants argue that Lisa's claims are time-barred. Plaintiff asserts that Defendants should be estopped from asserting such a defense due to Gregg's alleged concealment of the sale of the LIC Property.

   a.  Statute of Limitations

Under New York law, the statute of limitations for fraudulent misrepresentation is the same as common law fraud, the greater of six years from the date the fraud was perpetrated or two years from the date of plaintiff's actual or reasonably possible discovery of the fraud. See N.Y. C.P.L.R. § 213(8); Dinger v. Kling Agency, Inc., 654 N.Y.S.2d 415, 416 (2d Dep't 1997). Under New York law, a cause of action for fraudulent inducement must be brought within six years from the actionable conduct or two years from the discovery of the fraud. See Asbeka Indus. v. Travelers Indemnity Co., 831 F. Supp. 74, 80 (E.D.N.Y. 1993); Georgiou v. Panayia of the Mountains Greek Orthodox Monastery, Inc., 16 A.D.3d 998, 999, 792 N.Y.S.2d 667 (N.Y. 2005); N.Y. C.P.L.R. § 213(8). The same statute of limitations applies to breach of fiduciary duty claims where allegations of fraud are essential to the claims. See Kaufman v. Cohen, A.D.2d 113, 118, 760 N.Y.S.2d 157, 164 (1st Dep't. 2003) ("[T]he case law in New York clearly holds that a cause of action for breach of fiduciary duty based on allegations of actual fraud is subject to a six-year limitations period.") (citations omitted); Klein v. Gutman, 12 A.D.3d 417, 419, 784 N.Y.S.2d 581, 584 (2d Dep't. 2004) ("[A] cause of action alleging breach of fiduciary ... based on allegations of actual fraud ... is subject to a six-year limitations period.") (citations omitted). Similarly, under New York law, an action for a constructive trust begins to accrue, and the limitations period begins to run, as of "the date when the acts occurred on which the claim of constructive trust is predicated," Scheuer v. Scheuer, 308 N.Y. 447, 450, 126 N.E.2d

12

555, 558 (1955). The "acts" relevant are the "wrongful acts" giving rise to the action. See Boronow v. Boronow, 71 N.Y.2d 284, 288, 525 N.Y.S.2d 179, 519 N.E.2d 1375, 1377 (1988) (stating that an action for constructive trust is governed by "the six-year Statute of Limitations ... which begins to run in a constructive trust case upon the occurrence of the wrongful act"); Kaufman v. Cohen, 307 A.D.2d at 127, 760 N.Y.S.2d at 171 ("An action to impose a constructive trust is governed by the six-year statute of limitations ... which commences to run upon occurrence of the wrongful act giving rise to a duty of restitution, and not from the time when the facts constituting the fraud are discovered.").

      b.      Equitable Estoppel

Because Lisa alleges state law claims, New York estoppel law is invoked.

In New York, "equitable estoppel" is applicable "[1] 'where the defendant conceals from the plaintiff the fact that he has a cause of action [and] [2] where the plaintiff is aware of his cause of action, but the defendant induces him to forego suit until after the period of limitations has expired.'" Pearl v. City of Long Beach, 296 F.3d 76, 82 (2d Cir. 2002), (citing Joseph M. McLaughlin, Practice Commentaries, N.Y. C.P.L.R. C201:6, at 63 (McKinney 1990)); see also Zumpano v. Quinn, 6 N.Y.3d 666, 674, 816 N.Y.S.2d 703, 849 N.E.2d 926 (2006) (citing Simcuski v. Saeli, 44 N.Y.2d 442, 449, 406 N.Y.S.2d 259, 377 N.E.2d 713 (1978)). This case falls into the first subset. The doctrine requires proof that "the defendant made an actual misrepresentation or, if a fiduciary, concealed facts which he was required to disclose, that the plaintiff relied on the misrepresentation and that the reliance caused plaintiff to delay bringing timely action." Kaufman, 760 N.Y.S.2d at 167.

It is not enough to have been misled or defrauded. The plaintiff must demonstrate her diligence in seeking the facts. Doe v. Holy See (State of Vatican City), 17 A.D.3d 793, 793

13

N.Y.S.2d 565, 569 (3d Dep't 2005); see also Zola v. Gordon, 685 F. Supp. 354, 365 (S.D.N.Y.), on reargument, 701 F. Supp. 66 (S.D.N.Y. 1988) ("Stated another way, in cases involving fiduciary relationships, tolling ceases to work to a plaintiff's benefit when the plaintiff possesses sufficient facts that he must engage in some inquiry, and he fails to live up to this obligation."). And "equitable estoppel does not apply where the misrepresentation or act of concealment underlying the estoppel claim is the same act which forms the basis of plaintiff's underlying substantive cause of action." Kaufman, 760 N.Y.S.2d at 167.

At issue in the instant motion, is whether the undisclosed sale of the LIC Property, which increased Gregg's cash assets by $650,000, supports application of equitable estoppel. While Lisa acknowledged that the Stipulation was not induced by fraud and waived her rights to further discovery, she is not barred from asserting claims arising from fraud. Under New York law, "otherwise valid releases or waivers may be set aside on the traditional bases of fraudulent inducement, fraudulent concealment, misrepresentation, mutual mistake or duress." Harding v. Naseman, No. 07 Civ. 8767, 2008 WL 4900562, at *7 (S.D.N.Y. Nov. 14, 2008). This principle would be particularly strong if spouses owe each other a fiduciary duty to disclose assets in divorce. Id.

The undisputed facts regarding the sale of the LIC Property are clear. Gregg did not disclose the transaction or the proceeds. The Purchase Agreement states that the proceeds would be held in escrow by his real estate attorney, and not by Gregg himself. Moreover, at his deposition in 2003, Gregg testified that he still owned over 18% of the partnership interest in the LIC Property, notwithstanding that he sold half of his share just months earlier. Further, as late as July 22, 2004, Gregg signed the Stipulation without adjusting upwards by $650,000 the value

14

of his cash assets. Finally, Lisa did not learn about the sale of the LIC Property until discovery in this case.

In these circumstances, equitable estoppel with regard to the sale of the LIC Property is warranted. Whether fraudulent or not, as the Court will discuss infra, at no time during the divorce or within the statute of limitations period was the sale revealed. The sale of the LIC Property during the divorce, and Gregg's non-disclosure of the sale during both his deposition and upon the signing of the Stipulation, both of which occurred after the sale, as well as placing the proceeds from the sale in his attorney's account rather than his own, left Lisa with no means of possessing "timely knowledge sufficient to place her under a duty to make inquiry and ascertain all the relevant facts prior to the expiration of the applicable Statute of Limitations." Gleason v. Spota, 194 A.D.2d 764, 599 N.Y.S.2d 297, 299 (2d Dep't 1993) (internal quotation marks and citation omitted). Simply put, there was no paper trail for Lisa to follow or even question regarding the LIC Property. Once alerted to the possibly of misrepresentations during the divorce, Plaintiff diligently pursued the instant action. Therefore, it is respectfully recommended that the statute of limitations with regard to the sale of the LIC Property be tolled.

III.    Material Issues of Fact Preclude Summary Judgment

Equitable estoppel precludes Defendants from asserting a statute of limitations defense. However, while Plaintiff has presented sufficient evidence to warrant equitable estoppel regarding the sale of the LIC property and $650,000 asset, there are triable issues of material fact concerning the sale that preclude her from ultimately prevailing on her motion for summary judgment.

Plaintiff's claims include causes of action for common law fraud and fraud in the inducement, breach of fiduciary duty, and constructive trust.

To establish a fraud claim, Plaintiff must prove four elements: (i) that Gregg and Defendants made a material, false representation, (ii) that they had an intent to defraud her thereby, (iii) that Plaintiff reasonably relied on the representation, and (iv) that the representation damaged her. See May Dept. Stores Co. v. Int'l Leasing Corp., Inc., 1 F.3d 138, 141 (2d Cir. 1993); see also Lama Holding Co. v. Smith Barney Inc., 88 N.Y.2d 413, 422 (N.Y. 2009) (citations omitted).

A breach of fiduciary duty cause of action requires Plaintiff to establish three elements: (i) the existence of a fiduciary duty, (ii) a knowing breach of that duty, and (iii) damages resulting therefrom. See Johnson v. Nextel Commc'ns, Inc., 660 F. 3d 131, 138 (2d Cir. 2011).

Under New York law, "[i]n general, though as an equitable doctrine its application to particular circumstances is susceptible of some flexibility, to establish a constructive trust there must be provided: (1) a confidential or fiduciary relation, (2) a promise, express or implied, (3) a transfer made in reliance on that promise, and (4) unjust enrichment." Bankers Sec. Life Ins. Soc'y v. Shakerdge, 49 N.Y.2d 939, 940, 428 N.Y.S.2d 623, 406 N.E.2d 440 (1980) (citations omitted); see also Cerabono v. Price, 7 A.D.3d 479, 775 N.Y.S.2d 585 (2d Dep't 2004). That being said, "strict adherence to the confidential or fiduciary relationship element of a constructive trust is not necessary when a party holds property under circumstances that in equity and good conscience he ought not retain." Sec. Pacific Mortg. & Real Estate Services, Inc. v. Republic of Philippines, 962 F.2d 204, 210 (2d Cir. 1992). Instructive on this point is the often cited passage from Justice Cardozo's opinion in Beatty v. Guggenheim Exploration Co., 225 N.Y. 380, 122 N.E. 378 (1918). He wrote, "A constructive trust is the formula through which the conscience of equity finds expression. When property has been acquired in such circumstances

16

that the holder of the legal title may not in good conscience retain the beneficial interest, equity converts him into a trustee." Id. at 386, 122 N.E. 378.

In support of her claims, Plaintiff alleges that Gregg falsely represented the value of the LIC Property and did so with the intent to claim that his net worth was less than its true amount during their divorce settlement, that she relied on these false representations when she accepted the 2004 Stipulation of Settlement, and that she was thereby injured by receiving less in the divorce settlement than she would have had she known the true value of the LIC Property.

To prevail on her motion Lisa would need to show that there is no material dispute of fact as to the non-disclosure of the LIC Property sale and resulting $650,000, but also that there is no material dispute of fact as to her entitlement to a specific share of those proceeds.

The sale of the LIC Property and the ensuing circumstances could be found to be fraudulent or could not. It is a question of fact whether Gregg's non-disclosure was fraudulent or carelessness upon his part. While the Purchase Agreement stated that the proceeds would be held in escrow by his real estate attorney, this measure could be found to be either a convenient accommodation or a concealment in itself. Thus, a material dispute.

Further, is not clear that the sale of the LIC Property affects the property's valuation. Gordon, who purchased half of Gregg's share in the LIC Property for $650,000, states in his declaration that he was aware that $650,000 was not necessarily the fair market value of the LIC Property, and that he bought the property interest to help Gregg finance the divorce. At this juncture, a material dispute exists as to whether Lisa is entitled to a particular share of the sale of the LIC Property or that if she had known about the sale it would have altered the ultimate Stipulation. See Harding v. Nasemen, No. 07 Cv. 8767 (RPP), 2008 WL 4900562, at *5 (S.D.N.Y. Nov. 14, 2008) (explaining that the measure of damages is "the difference between

17

what would have been a fair and honest settlement and the amount . . . accepted in reliance on the alleged misrepresentation of defendant").

Because material issues of fact exist regarding Lisa's fraud and breach of fiduciary duty claims, a question of fact remains regarding unjust enrichment on Defendants' part. Thus, Lisa's constructive trust claim is similarly precluded from summary judgement.

## CONCLUSION

For the foregoing reasons, this Court respectfully recommends that Defendants' motion for summary judgment, appearing as Docket Entry No. 60 herein, be denied, and that Plaintiff's motion for summary judgment, appearing as Docket Entry No. 59 herein, be granted in part and denied in part. It is recommended that Plaintiff's motion be granted only to the extent that the statute of limitations regarding the sale of the LIC Property be tolled and denied in all other respects.

## OBJECTIONS

A copy of this Report and Recommendation is being provided to all counsel via ECF.  Any written objections to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days of filing of this report.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 72(b).  Any requests for an extension of time for filing objections must be directed to the District Judge assigned to this action prior to the expiration of the fourteen (14) day period for filing objections.  Failure to file objections within fourteen (14) days will preclude further review of this report and recommendation either by the District Court or Court of Appeals. Thomas v. Arn, 474 U.S. 140, 145 (1985) ("[A] party shall file objections with the district court or else waive right to appeal."); Caidor v. Onondaga Cnty., 517 F.3d 601, 604 (2d Cir. 2008) ("[F]ailure to object timely to a magistrate's report operates as a waiver of any further judicial review of the

magistrate's decision").


Dated: Central Islip, New York
       August 22, 2023

/s/ Anne Y. Shields  
Anne Y. Shields  
United States Magistrate Judge